***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon review of the evidence, affirms with minor modifications the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. An employer-employee relationship existed between Plaintiff-employee and Defendant-employer on August 26, 2001.
2. Wausau Insurance was the workers' compensation carrier on the risk at the time of the alleged incident.
3. Pay records for Plaintiff's employment with Defendant-employer were admitted into evidence as Stipulated Exhibit #1.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the incident in question, Plaintiff had been a sales associate with Defendant-employer for three years. She also had a work history of retail sales, textile employment and working as a waitress. She graduated from high school but had not attended college.
2. On August 26, 2001 Plaintiff, a co-worker and security guard were at work for Defendant-employer when two men walked into the store. One approached the Rolex watches case and the other yelled, "Let's do it!" One of the assailants shot the security guard in the leg. Other customers were also in the store, including a man with a four-year old girl. One of the assailants waved a gun and ordered the customers and workers, including Plaintiff, to get down on the floor. Plaintiff was afraid for her life and for the life of the security guard, who was being threatened by one of the assailants. During her time on the floor, Plaintiff heard gunfire. The armed assailants stole watches and diamonds. After the robbery and shooting, the store was left in disarray, with glass and blood around the store and smashed jewelry cases.
3. After the robbery, Plaintiff went home and cried. She was scheduled to work the next day but could not bring herself to go back to the mall where the jewelry store was located. Plaintiff did not seek immediate medical attention. Plaintiff received no physical injuries as a result of this incident. During the course of her testimony at the hearing concerning the events of August 26, 2001, Plaintiff became very upset and was crying.
4. On August 29, 2001, Plaintiff presented to Dr. Margaret Simpson for psychological treatment. Dr. Simpson saw a need for immediate treatment for Plaintiff, as Plaintiff was having an acute distress reaction to the events of August 26, 2001. After thirty days of treatment, Plaintiff's condition evolved into post-traumatic stress disorder, resulting from the armed robbery on August 26, 2001.
5. Dr. Simpson continued to treat Plaintiff up until the time of the hearing. Dr. Simpson opined that the armed robbery and shooting incident Plaintiff experienced at work on August 26, 2001 caused the conditions for which she treated Plaintiff, and that as a result of those events, Plaintiff was unable to return to work with Defendant-employer or in any retail setting. There was no evidence of Plaintiff malingering with respect to her symptoms.
6. After several months of treatment with Dr. Simpson, Plaintiff undertook certification as a dive master and explored courses in underwater photography. Dr. Simpson thought this was a good idea to help with Plaintiff's recovery and to enhance her sense of productivity as an individual. Plaintiff's psychological prognosis is good with the continued pursuit of the photography/videography vocation.
7. At the time of the hearing, Plaintiff had not returned to work in any capacity.
8. On August 28, 2002, Plaintiff underwent an independent psychological evaluation with Dr. Verne Schmickley, Ph.D. Dr. Schmickley administered several psychological tests to Plaintiff, including the Beck Depression Inventory. The score from this Inventory was not suggestive of any significant level of depression, but did indicate that Plaintiff was not exaggerating any psychiatric problems. The post-traumatic stress diagnostic scale and the Traumatic Event Sequelae Inventory suggested that Plaintiff's symptoms were at a relatively low level and were more consistent with an adjustment disorder rather than post-traumatic stress disorder. The MMPI-II was also administered to Plaintiff, and the results were primarily within a normal range and were unremarkable.
9. Based on the testing and review of Plaintiff's medical records, Dr. Schmickley diagnosed Plaintiff with somatoform features, which are psycho-physiological problems or physical features without physical problems. He considered Plaintiff to have dependent personality features but not post-traumatic stress disorder. Based on the test results, Dr. Schmickley indicated that malingering should be strongly suspected.
10. At the time of his examination of Plaintiff, Dr. Schmickley did not believe that post-traumatic stress disorder was present, nor did he consider Plaintiff having suffered any psychological damage as a result of the incident of August 26, 2001. Dr. Schmickley also considered Plaintiff to be at maximum psychological improvement and that she was not disabled from gainful employment, even in a retail setting. Dr. Schmickley opined that structured exposure therapy and a psychiatric medication referral should have been utilized in Plaintiff's treatment, but he did not disagree with Dr. Simpson's assessment of acute distress disorder followed by post-traumatic disorder. Finally, in his view, the events of August 26, 2001 led to Plaintiff's conditions as assessed by Dr. Simpson.
11. Plaintiff's average weekly wage is $676.05, yielding a compensation rate of $450.72.
12. On August 26, 2001, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with Defendant-employer, resulting in acute distress disorder and post-traumatic stress disorder. Dr. Simpson's opinions are given greater weight than the contrary opinions of Dr. Schmickley.
13. As a result of the injury by accident of August 26, 2001, Plaintiff has been unable to earn any wages in any employment from the date of the injury by accident on August 26, 2001 to the date of hearing before the deputy commissioner and continuing.
14. As a result of the injury by accident of August 26, 2001, Plaintiff is in need of further psychological treatment and vocational assistance in order to return to gainful employment.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. On August 26, 2001, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with Defendant-employer, resulting in acute distress disorder and post-traumatic stress disorder. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury by accident of August 26, 2001, Plaintiff incurred expenses for psychological treatment of her conditions and is in need of further psychological treatment and vocational assistance in order to return to gainful employment. N.C. Gen. Stat. §§ 97-2(19); 97-25.
3. Plaintiff's average weekly wage is $676.05, yielding a compensation rate of $450.72.
4. As a result of the injury by accident of August 26, 2001, Plaintiff has been unable to earn any wages in any employment from the date of her injury on August 26, 2001 to the present and continuing. Plaintiff is entitled to temporary total disability compensation at the rate of $450.72 per week from August 27, 2001 to the date of hearing before the deputy commissioner and continuing until further order of the Industrial Commission. N.C. Gen. Stat. §§ 97-2(9); 97-29.
5. Dr. Margaret Simpson is an appropriate psychologist to continue providing psychological treatment to Plaintiff for her condition resulting from her compensable injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the Foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at the rate of $450.72 per week from August 27, 2001 to the date of the hearing before the deputy commissioner and continuing until further order of the Industrial Commission. All amounts that have accrued shall be paid in one lump sum.
2. Defendants shall pay all medical expenses Plaintiff incurred for her psychological treatment with Dr. Margaret Simpson and with Dr. Verne Schmickley when bills for same have been submitted according to proper Industrial Commission procedure. Dr. Margaret Simpson is deemed Plaintiff's treating psychologist for the purpose of providing additional needed psychological treatment for Plaintiff's condition, as well as to assist in preparing Plaintiff to participate in vocational training and to eventually return to gainful employment.
3. Defendants shall provide Plaintiff with vocational re-training, if necessary, and vocational assistance in locating suitable employment, subject to review by Dr. Simpson.
4. A reasonable attorney's fee of twenty-five percent (25%) of the sums due plaintiff under Paragraph 1 of this AWARD is approved and shall be paid by the defendants as follows: twenty-five percent (25%) of the accrued compensation shall be deducted from said sum and paid to plaintiff's counsel in one lump sum; thereafter, defendants shall pay every fourth check due the plaintiff directly to plaintiff's counsel.
5. Defendants shall pay the costs of this action.
This the ___ day of August 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
DISSENTING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER